## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| FABER BROTHERS, INC., | ) Case. No. 06 B 07852 |
| | ) |
| Debtor. | ) Hon. Jack B. Schmetterer |

### AGREED FINAL HEARING ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL; AND (B) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO WELLS FARGO FOOTHILL, INC. AND TO JUNIOR ALLEGED SECURED CREDITORS

This matter came before this Court on the motion (the "Motion") of Faber Brothers, Inc. ("Debtor") requesting that this Court enter an order at a final hearing authorizing Debtor to: (a) use certain Cash Collateral; and (b) grant adequate protection and provide security and other relief to Wells Fargo Foothill, Inc. Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b), and objections, if any, having been withdrawn or resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A.    On the Filing Date, an involuntary petition under Chapter 7 of the Code was filed against the Debtor. On July 19, 2006, the case was converted to a case under Chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as a debtor in possession pursuant to Code §§ 1107 and 1108.

B.    The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in

28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. §§ 1408 and 1409(a).

C.      Subject to the terms of Paragraph 7(a) of this Order, the Debtor has stipulated and represented to the Court that: (1) the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship between Debtor and Lender; (2) as of the Filing Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an Allowed Claim, in an amount not less than $3,781,576.51, inclusive of not less than $16,196.44 of letter of credit obligations, but exclusive of accrued and accruing interest, fees, costs and other applicable charges; (3) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (4) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; (5) the Prepetition Liens, among other things, secure payment of all of the Prepetition Debt; and (6) the Prepetition Liens are First Priority Liens, subject to Permitted Liens.

D.      Subject to the terms of Paragraph 7(a) of this Order, the Debtor has stipulated and represented to the Court that: (1) as of the Filing Date, Debtor is liable to Shapiro on the Shapiro Debt in an amount not less than $250,000.00, exclusive of accrued and accruing interest, fees, costs and other applicable charges; (2) the Shapiro Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the documents which evidence such indebtedness; (3) no offsets, defenses or counterclaims to the Shapiro Debt exist, and no portion of the Shapiro Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law, except as to the extent the Shapiro Debt is subordinated to the Prepetition Debt and all other claims of Lender against Debtor pursuant to the Shapiro Subordination Agreement, enforceable under Code § 510(c); (4) the Shapiro Debt is secured by the Shapiro Liens on the Prepetition Collateral, excluding the Life Insurance Policies; (5) the Shapiro Liens are Second Priority Liens, which are junior in time and right to the Prepetition Liens and the Replacement Liens which the Debtor has granted to Lender, and to the Carveout and the Unpaid Budgeted

Expenses (the "Second Priority Liens"); and (6) the value of Shapiro's interest in Debtor's interest in the Prepetition Collateral is presently undetermined.

E.    Subject to the terms of Paragraph 7(a) of this Order, the Debtor has stipulated and represented to the Court that: (1) as of the Filing Date, Debtor is liable to Remington on the Remington Debt in an amount not less than $400,000.00, exclusive of accrued and accruing interest, fees, costs and other applicable charges; (2) the Remington Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the documents which evidence such indebtedness; (3) no offsets, defenses or counterclaims to the Remington Debt exist, and no portion of the Remington Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law , except as to the extent the Remington Debt is subordinated to the Prepetition Debt and all other claims of Lender against Debtor pursuant to the Remington Subordination Agreement, enforceable under Code § 510(c) and to the Shapiro Debt pursuant to that certain subordination agreement between Remington and Shapiro; (4) the Remington Debt is secured by the Remington Liens on the Prepetition Collateral, excluding the Life Insurance Policies; (5) the Remington Liens are third priority liens, which are junior in time and right to the Prepetition Liens and the Replacement Liens which the Debtor has granted to Lender and the Shapiro Liens, the Carveout, and the Unpaid Budgeted Expenses (the "Third Priority Liens"); and (6) the value of Remington's interest in the Debtor's interest in the Prepetition Collateral is presently undetermined.

F.    This Court finds that Debtor has stipulated and represented that, upon the entry of this Order, Lender's interests in the Prepetition Collateral will be adequately protected.  Such finding is made without prejudice to Lender's right to later assert that its interest in the Aggregate Collateral lacks adequate protection.

G.    A Committee has been appointed in this Case, and it has retained counsel.

H.    An immediate and continuing need exists for Debtor to use Cash Collateral in order to enable Debtor to maximize the value of its property.

I.    Debtor is unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of Debtor's business.  Except as provided

-3-

below, Debtor is unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Lender.

J.      The terms of this Order have been negotiated in good faith and at arms' length.

K.      Under the circumstances of the Case, the terms and conditions of this Order are a fair and reasonable response to Debtor's request for Lender's consent to the use of Cash Collateral, and the entry of this Order is in the best interests of Debtor's estate and its creditors.

L.      The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and 9014 and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.      Authorization to Use Cash Collateral. Debtor is authorized to use Cash Collateral: (a) solely in accordance with and pursuant to the terms and provisions of this Order; and (b) only to the extent required to pay those expenses enumerated in the Budget for the then-current or a prior period (solely to the extent not previously paid and included in the column named "Remaining Budget") as and when such expenses become due and payable; provided however, Debtor may make payments up to five percent (5%) in excess of a weekly line item expense in the Budget (other than professional fees), not to exceed $20,000 in the aggregate. Prior to the Termination Date and indefeasible payment in full of the Prepetition Debt, Debtor may not use or seek to use Cash Collateral other than pursuant to the terms of this Order.  Notwithstanding anything to the contrary in this Paragraph 1, however, the Debtor is hereby authorized and directed to use Cash Collateral at any time to pay Allowable 506(b) Amounts, and the Carveout.  Any Cash Collateral used by Debtor in accordance with the terms of this Order shall not be subject to any claim for disgorgement by Lender, except in the case of fraud, bad faith or willful misconduct.

2.      Procedure for Use of Cash Collateral.

(a)    Delivery of Cash Collateral to Lender/Remittance of Cash
Collateral to Debtor.  Prior to Full Payment of Lender, Debtor is authorized and directed to
deposit all Cash Collateral now or hereafter in its possession or under its control into the
existing Blocked Account (or to otherwise deliver all such Cash Collateral to Lender in a
manner satisfactory to Lender) promptly upon receipt thereof.   Such Cash Collateral
(including Cash Collateral which Lender has applied to the Prepetition Debt subsequent to
the Filing Date pursuant to Paragraph 5(d) of this Order) shall thereafter be remitted to
Debtor by Lender as Cash Collateral (i.e., not as postpetition debt), and used by Debtor,
solely to the extent Debtor is permitted to use such Cash Collateral under Paragraph 1 of this
Order.

(b)    Account Debtors.  Prior to Full Payment of Lender, without
further order of court, Lender may direct Debtor to, or Lender may directly, instruct all
account debtors of existing and future accounts receivable included in the Aggregate
Collateral, other than any accounts collected, sold or otherwise disposed of in accordance
with Paragraph 6(h) of this Order, to make payments directly into such Blocked Account or
such other accounts satisfactory to Lender, in which event all such proceeds shall be treated
in accordance with the provisions of this Order.

(c)    Cash Collateral in Lender's Possession.  Lender is authorized to
collect upon, convert to cash and enforce checks, drafts, instruments and other forms of
payment now or hereafter coming into its possession or under its control which constitute
Aggregate Collateral or proceeds of Aggregate Collateral.

3.    Carveout Terms.  Any provision of this Order or the Loan Agreement
to the contrary notwithstanding, the Replacement Liens and superpriority claims under §
507(b) of the Code granted to the Lender pursuant to this Order shall be subject and
subordinate to a Carveout for: (i) the payment of allowed professional fees and
disbursements incurred from the Filing Date through the Termination Date by counsel
retained by Debtor pursuant to Code § 327, in an amount not to exceed $85,000.00; (ii) the
payment of allowed fees and disbursements incurred from the Filing Date through the later of
(a) the Termination Date or (b) conversion to chapter 7 or dismissal of this Case by the
members of any Committee and its counsel retained pursuant to Code § 1103(a) and by the

petitioning creditors and their counsel, in an amount not to exceed $40,000.00 in the aggregate; and (iii) quarterly fees payable by Debtor pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court through the Termination Date. All prepetition and gap-period retainers shall be used before any payments shall be due from Lender in respect of the Carveout from proceeds of the Aggregate Collateral. The Carveout shall be reduced on a dollar-for-dollar basis by any payments (other than by payments from prepetition or gap-period retainers) of fees and expenses covered thereby. Upon the Termination Date, Lender shall have no further obligation to remit Cash Collateral on account of any fees or expenses accrued on, prior to, or after the Termination Date, whether or not such fees and expenses were included in the Budget, other than any accrued but unpaid Carveout related to the period occurring prior to the Termination Date and any Unpaid Budgeted Expenses otherwise payable from Cash Collateral pursuant to the terms of this Order. Notwithstanding anything to the contrary, the Carveout shall not include fees or expenses incurred by any entity, including Debtor or the Committee and professionals retained by Debtor or the Committee, in connection with claims, actions or services adverse to Lender or Lender's interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred, (2) using or seeking to use Cash Collateral or selling any other Aggregate Collateral without Lender's consent, (3) incurring indebtedness without Lender's consent or (4) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lender; provided, however, that up to $5,000 of the Carveout be used by counsel for the Committee to investigate the validity, extent, amount, perfection, priority, or enforceability of the Aggregate Liens. Nothing herein shall be construed as consent to the allowance of any fees, costs or expenses of the professionals retained by Debtor or the Committee or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses. No payment of the Carveout shall constitute a reduction of the Aggregate Debt.

4.    Termination of Right to Use Cash Collateral.

(a)    Termination Date.    Unless extended by the Court upon the written agreement of Lender, this Order and Debtor's authorization to use Cash Collateral pursuant to this Order will automatically terminate on the Termination Date without further notice or order of Court, except with respect to the Carveout and any Unpaid Budgeted Expenses on the terms otherwise set forth in this Order. During the pendency of any motion filed by Lender alleging lack of adequate protection of its interests in the Aggregate Collateral, Lender shall have no obligation to consent to the use of Cash Collateral.

(b)    Rights Upon Termination.    Prior to Full Payment of Lender, upon the Termination Date and without further notice or order of the Court, at Lender's election: (1) the Prepetition Debt shall be immediately due and payable; (2) subject to the payment of the Carveout and any Unpaid Budgeted Expenses existing as of the Termination Date, the Lender shall be entitled to apply or set off any cash in Lender's possession or control to the Prepetition Debt in accordance with Paragraph 5(d) of this Order, until such Prepetition Debt is indefeasibly and finally paid in full; and (3) Debtor shall be prohibited from using any Cash Collateral for any purpose other than (i) first, to pay the Carveout and to pay any such Unpaid Budgeted Expenses, and (ii) second, application to the Prepetition Debt in accordance with Paragraph 6(d) of this Order, until such Prepetition Debt is indefeasibly and finally paid in full; provided, however, that during the two (2) business day period following the Termination Date, the Debtor and the Committee shall have the right to obtain an order of this Court determining that the Termination Date has not occurred; provided, further, that the Committee shall have the right to seek on notice an order of this Court that the Termination Date has not occurred because Lender's interests in the Aggregate Collateral (including, without limitation, interests on account of accrued and accruing Allowable 506(b) Amounts) are adequately protected), but that during such two (2) business day period, the Debtor may not use Cash Collateral unless such use is agreed to in writing by Lender). Upon the earliest to occur of the Termination Date, Debtor's rejection of the "Lease" (described in Paragraph 8(j) of this Order) and October 6, 2006, provided that not less than seven (7) calendar days' written notice has been given to Debtor, the Committee, Shapiro and

Remington and filed with the Court ("Stay Relief Notice"): (1) at Lender's election, without further order of the Court, Lender shall have automatic and immediate relief from the automatic stay with respect to all Aggregate Collateral other than the Life Insurance Policies, unless authorized by separate order of this Court (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Prepetition Documents and applicable nonbankruptcy law with respect to such portion of the Aggregate Collateral; and (2) Debtor shall be authorized and directed to surrender such portion of the Aggregate Collateral and to otherwise cooperate to assist Lender in the exercise of the rights and remedies available to Lender under the Prepetition Documents and applicable nonbankruptcy law with respect to such portion of the Aggregate Collateral; provided, that during the six (6) calendar day period following Lender's issuance of a Stay Relief Notice, an objection to Lender having relief from the automatic stay may be filed and heard by the Court on shortened notice (subject to the Court's availability), with Lender having reserved all of its rights to support such stay relief and defend against such objections on any applicable ground (including, without limitation, by seeking enforcement of the terms of the Shapiro Subordination Agreement).   Without limiting and in addition to the foregoing, Lender shall be deemed to have reserved all of its rights to seek relief from the automatic stay in order to exercise Lender's rights and remedies with respect to the Life Insurance Policies and the proceeds thereof; provided, that, only the Committee shall be entitled to contest any such relief sought by Lender in respect of the Life Insurance Policies.

5.      Adequate Protection of Interests of Lender in the Prepetition Collateral and the Prepetition Liens. As adequate protection of the interests of Lender in the Prepetition Collateral and the Prepetition Liens:

(a)     Priority of Secured Liens and Claims.

(i)     Lender's Claim.   Subject to the reservation of rights set forth in Paragraph 7(a) of this Order: (1) the Prepetition Liens shall constitute First Priority Liens, subject only to Permitted Liens and Unpaid Budgeted Expenses otherwise payable from Cash Collateral pursuant to the terms of this Order; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets,

defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; (4) Lender's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than $3,781,576.51 as of the Filing Date, inclusive of not less than $16,196.44 of letter of credit obligations, but exclusive of accrued and accruing interest, fees, costs and other applicable charges; and (5) Debtor hereby releases, discharges, and acquits Lender and its officers, directors, principals, agents, attorneys, predecessors in interest, and successors and assigns of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of the entry of this Order with respect to or in connection with the Prepetition Debt or the Prepetition Documents.

(ii)    Shapiro's Claim.   Subject to the reservation of rights set forth in Paragraph 7(a) of this Order: (1) the Shapiro Liens shall constitute Second Priority Liens, subject only to the Prepetition Debt and the Prepetition Liens and any Permitted Liens, the Carveout, and the Unpaid Budgeted Expenses; (2) the Shapiro Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Shapiro Documents; (3) no offsets, defenses or counterclaims to the Shapiro Debt exist, and no portion of the Shapiro Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law, except as to the extent the Shapiro Debt is subordinated to the Prepetition Debt and all other claims of Lender against Debtor pursuant to the Shapiro Subordination Agreement, enforceable under Code § 510(c); (4) Shapiro's claim with respect to the Shapiro Debt shall for all purposes constitute an allowed claim within the meaning of Code § 502 in an amount not less than $250,000.00 as of the Filing Date, but exclusive of accrued and accruing interest, fees, costs and other applicable charges, and shall be secured to the extent of the value of Shapiro's interest in the Debtor's interest in the Prepetition Collateral within the meaning of Code § 506; and (5) Debtor hereby releases, discharges, and acquits Shapiro, its trustees, beneficiaries, agents, attorneys, predecessors in interest, and successors and assigns of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of the entry of this Order, but only with respect to or in connection with the Shapiro Debt and /or the Shapiro Liens, and this provision is not intended to release, nor shall it be held to release, any

cause of action which the Debtor or any party in interest who claims through the Debtor may assert against Shapiro or any of its trustees, beneficiaries, agents, attorneys, predecessors in interest, and successors and assigns which arise from a transaction other than the transaction which created the Shapiro Debt and the Shapiro Liens, and shall specifically not release any claim or counterclaim with respect to the Lease or any Avoidance Action against such parties.

        (iii)    Remington's Claim.  Subject to the reservation of rights set forth in Paragraph 7(a) of this Order: (1) the Remington Liens shall constitute Third Priority Liens, subject only to the Prepetition Debt and the Prepetition Liens and any Permitted Liens; the Shapiro Debt and Shapiro Liens, the Carveout, and the Unpaid Budgeted Expenses; (2) the Remington Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Remington Documents; (3) no offsets, defenses or counterclaims to the Remington Debt exist, and no portion of the Remington Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law, except as to the extent the Remington Debt is subordinated to the Prepetition Debt and all other claims of Lender against Debtor pursuant to the Remington Subordination Agreement, enforceable under Code § 510(c), and to the Shapiro Debt pursuant to that certain subordination agreement between Remington and Shapiro; (4) Remington's claim with respect to the Remington Debt shall for all purposes constitute an allowed claim within the meaning of Code § 502 in an amount not less than $400,000 as of the Filing Date, but exclusive of accrued and accruing interest, fees, costs and other applicable charges, and shall be secured to the extent of the value of Shapiro's interest in the Debtor's interest in the Prepetition Collateral within the meaning of Code § 506; and (5) Debtor hereby releases, discharges, and acquits Remington, its trustees, beneficiaries, agents, attorneys, predecessors in interest, and successors and assigns of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of the entry of this Order, but only with respect to or in connection with the Remington Debt and /or the Remington Liens, and this provision is not intended to release, nor shall it be held to release, any cause of action which the Debtor or any party in interest who claims through the Debtor may assert against Remington or any of its representatives, beneficiaries, agents, attorneys, predecessors in interest, and successors and assigns which arise from a transaction other than the transaction which created the Remington Debt and the Remington Liens, and shall specifically not release any

claim or counterclaim with respect to any Avoidance Action against such parties.

(b)   Replacement Liens Granted To Lender.  As adequate protection, Lender is hereby granted the Replacement Liens on the Postpetition Collateral as security for payment of the Prepetition Debt.  The Replacement Liens:  (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be First Priority Liens (subject to the Permitted Liens, the Carveout and Unpaid Budgeted Expenses) that are properly perfected, valid and enforceable without any further action by Debtor or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case; and (4) shall be senior in all respects to any replacement liens granted to Shapiro or Remington pursuant to this Order (including, without limitation, pursuant to Paragraphs 8(e) and 8(f).  Notwithstanding the foregoing, Debtor is authorized and directed to execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may deem necessary or desirable from time to time.

(c)   Allowed Code § 507(b) Claim.  If and to the extent the adequate protection of the interests of Lender in the Prepetition Collateral granted to Lender pursuant to this Order proves insufficient, Lender shall have an allowed claim under Code § 507(b), in the amount of any such insufficiency.

(d)   Application of Cash Collateral.  Lender, at its election, is authorized to apply all Cash Collateral now or hereafter coming into Lender's possession or control as follows:  (1) first, to payment of Prepetition Debt consisting of Allowable 506(b) Amounts; and (2) second, to payment of other Prepetition Debt.  All such applications to Prepetition Debt shall be final, subject only to: (a) remittance of certain amounts of such Cash Collateral to Debtor in accordance with the other terms of this Order; and (b) the right of parties in interest to (i) object solely to such applications to Allowable 506(b) Amounts under and in accordance with Paragraph 6(a) of this Order and (ii) seek a determination in accordance with Paragraph 7(a) below that such applications to Prepetition Debt resulted in the payment of any unsecured, avoidable, or disallowable prepetition claim of Lender.

(e)     Prohibition Against Use of Cash Collateral.  Until Full Payment of Lender, Debtor will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363 for the use of such Cash Collateral:  (a) Lender has consented to such order; (b) there is no Prepetition Debt outstanding at the time of the entry of such an order; (c) such Cash Collateral is first used to immediately pay the Prepetition Debt in full.

(f)     Prohibition Against Additional Debt.   Until Full Payment of Lender, Debtor will not incur or seek to incur debt secured by a lien which is equal to or superior to the Aggregate Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364 for the incurrence of such debt:  (a) Lender has consented to such order; (b) there is no Prepetition Debt outstanding at the time of the entry of such an order; (c) such credit or debt is first used to immediately pay the Prepetition Debt in full.

(g)     No Surcharge.  Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its business, including all expenses that are reasonable and necessary to preserve the value of the Aggregate Collateral, through the period for which the Budget runs, provided that Shapiro has reserved its rights against Debtor as provided in Paragraph 8(c) of this Order.  In reliance on the representation by Debtor that the Budget includes all items that are reasonable and necessary to preserve the value of the Aggregate Collateral and therefore includes all items potentially chargeable to Lender under Code § 506(c), Lender has agreed to the entry of this Order.  Debtor agrees that the Budget also includes items that are not chargeable to Lender under Code § 506(c).  In the exercise of its business judgment, and in consideration of Lender's agreement to allow the Debtor to use Cash Collateral in accordance with this Order, to pay both the items which are, and which are not, chargeable to Lender under Code § 506(c), Debtor agrees that there shall be no further surcharge of the Aggregate Collateral for any purpose other than the Carveout and any Unpaid Budgeted Expenses, unless agreed to by Lender.  Therefore, at no time during the Case shall the surcharge provisions of Code § 506(c) or the enhancement of collateral provisions of Code § 552 be imposed upon Lender or any of the Aggregate Collateral for the benefit of any party in interest, including Debtor, any of Debtor's

-12-

professionals, the Committee, any of the Committee's professionals, or any Trustee, other than solely with respect to the Carveout and any Unpaid Budgeted Expenses.

(h)     Right to Credit Bid.  In all events, pursuant to Code § 363(k), Lender shall have the right to use the Prepetition Debt (if any) to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

(i)     Waiver of Right to Return/Consent to Setoff.  Debtor hereby waives its rights:  (1) to return any of the Aggregate Collateral pursuant to Code § 546(h); (2) to consent to setoff pursuant to Code § 553; and (3) to consent to any order permitting any claims pursuant to Code § 503(b)(9).

(j)     No Marshaling.   Neither Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

(k)     Ongoing Sales.   As further adequate protection of Lenders' interests in the Aggregate Collateral, Debtor is hereby authorized, without further Court order, to sell, transfer and otherwise dispose of existing inventory to pre-Filing Date customers of the Debtor or to third parties intended for subsequent sale to such customers, all pursuant to sale terms acceptable to Lender; provided, however, that nothing herein shall restrict the Debtor's authority, upon notice and motion, to otherwise seek to sell, transfer or dispose of such inventory or other Collateral pursuant to Code § 363.  Notwithstanding the foregoing, any such sales to pre-Filing Date customers (or to third parties intended for sale to such customers) shall be deemed to be within the ordinary course of Debtor's business if the purchase price is for cash in an amount not less than thirty percent (30%) of Debtor's cost therefor (unless the Lender has otherwise agreed to a different amount or different payment terms in writing, in advance), and the other terms are substantially the same as the terms under purchase orders consummated by the Debtor within the six month period prior to the Filing Date.

(l)     Intentionally Omitted.

(m)    Chief Operating Officer.  To the extent necessary, pursuant to Code § 363(b), Debtor is hereby authorized to retain, at all times prior to the earlier to occur of the Termination Date or Full Payment of Lender, a person or entity acceptable to Lender

as its Chief Operating Officer ("COO") on terms and conditions reasonably acceptable to Lender. Debtor has selected Glen Eisenhuth of Abrams & Jossel Consulting, Inc. ("Abrams") as its initial COO, who Lender has acknowledged is acceptable for purposes of this Order. Compensation for the COO shall not exceed the amounts set forth in the Budget for such item. The COO shall at all times be subject to the direction of Debtor and may be terminated at will by the Debtor; provided, that any such termination shall constitute an Event of Default unless a replacement COO reasonably acceptable to Lender is engaged concurrently with such termination. Debtor shall use commercially reasonable efforts to permit such COO to communicate with Lender with respect to the disposition of the Aggregate Collateral; provided, however, that Lender shall have no authority to direct the COO to take or refrain from taking any actions and Lender shall have no liability for any acts or omissions by the COO. Consistent with the foregoing, the parties acknowledge that after the earlier to occur of Full Payment of Lender or the date that all or substantially all of the Debtor's inventory has been sold, the COO's duties and responsibilities will likely diminish. Nothing herein shall prevent the Debtor from discharging or replacing the COO, or renegotiating the compensation and/or the scope of the COO's authority and responsibilities on a going-forward basis, following occurrence of such events.

(n)     Lender's Consultant.  Lender has retained Edward Hostmann, Inc. ("Hostmann") to render consulting services to Lender in connection with this Case. Debtor shall provide Hostmann with information and reports, and make its employees, management and representatives available for discussions with Hostmann during normal business hours regarding Debtor's financial condition, business, assets, liabilities and prospects, as Lender may reasonably request from time to time. As partial adequate protection of Lender's interests in the Prepetition Collateral, Lender shall be entitled to reimbursement from Debtor of all reasonable fees and expenses of Hostmann incurred by Lender in connection with this Case, subject only to objections as to their reasonableness in accordance with the provisions of Paragraph 6(a) of this Order.

6.     Miscellaneous Provisions.

(a)     Notice of and Objections to Allowable 506(b) Amounts.  Lender shall provide Debtor's counsel, counsel for any Committee, and the United States Trustee

-14-

with copies of all invoices sent by Lender's counsel or Hostmann to Lender (edited to delete any attorney-client or other confidential information) with respect to such fees and related costs, or with respect to any other professional fees incurred by Lender and asserted as Allowable 506(b) Amounts.  The foregoing shall not be deemed to preclude the Committee from seeking an order of this Court permitting an "in camera" review of any redacted portions of Lenders' counsel's invoices.  Any such party may object to the reasonableness of any such fees, costs and expenses; provided, that the Committee shall further be deemed permitted to object to the "reasonableness" of Hostmann's fees and expenses, within the meaning of that term in Code § 506(b), including on the basis that such amounts incurred (i) were unnecessary or duplicative, (ii) were excessive, and/or (iii) were inadequately detailed; provided, further, that nothing herein shall preclude Lender from disputing such objections on the basis, among others, that such services and expenses were necessary and not duplicative because other parties such as the COO (x) were not engaged by, and did not have a confidential relationship with, Lender and/or (y) were not for the direct and quantifiable benefit of Lender.  However, any such objection shall be forever waived and barred unless, within thirty (30) days of receipt of the invoice to which the objection relates:  (1) the objection is filed with the Court and served upon Lender; and (2) the objection describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs and expenses.  Any hearing on an objection to the fees, costs and expenses of Lender set forth on any invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection.  The disallowance of any such fees and expenses shall not affect Lender's right, if any, to collect such amounts from any person or entity other than Debtor, including, without limitation, Shapiro or Remington.

(b)     Force and Effect of Prepetition Documents/Emergency Cash Collateral Order.  Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents, and the terms and provisions thereof, shall remain in full force and effect with respect to the Aggregate Debt.  To the extent there exists any conflict among the Motion, the Prepetition Documents, the Shapiro Documents, and/or the

Remington Documents on the one hand, and the terms of this Order on the other hand, then this Order shall govern and control. To the extent of any conflict between the Emergency Cash Collateral Order and this Order, this Order shall govern and control.

(c)   Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to Lender, or, upon Full Payment of Lender, with respect to Shapiro or Remington, to the extent necessary to effectuate the provisions of this Order.

(d)   Financial Information. Debtor is hereby directed to deliver to Lender such financial and other information concerning the business and affairs of Debtor and any of the Aggregate Collateral as may be required pursuant to the Prepetition Documents and/or as Lender shall reasonably request from time to time, including, on Monday of each week: (1) reports comparing actual collections, new invoiced sales, and expenditures (broken down by expense category) to those set forth in the Budget for the previous week ended Friday; and (2) a report showing all accrued accounts payable as of the close of business on such previous Friday. Debtor is also directed to allow Lender access to the premises for the purpose of enabling Lender to inspect and audit the Aggregate Collateral and the Debtor's books and records. Such access for such purpose shall be permitted during normal business hours and upon forty-eight hours' notice or such shorter notice as may be provided in the Prepetition Documents. However, following the Full Payment of Lender, the Debtor is authorized and directed to provide the foregoing financial and other information and access to premises to Shapiro, Remington and to the Committee's professionals, on the same terms and to the same extent as provided to Lender prior to the Full Payment of Lender.

(e)   Insurance. Debtor is directed to deliver to Lender evidence, satisfactory to Lender, that the Aggregate Collateral is insured for the full replacement value thereof, that all insurance policies required by the Prepetition Documents or obtained in connection with the Aggregate Collateral are maintained in full force and effect, and that Lender is named as loss payee on all such property insurance policies and named as additional insured on all such liability policies as its interests may appear. However, following Full Payment of Lender, the Debtor is authorized and directed to provide the foregoing evidence of insurance to Shapiro, Remington and to the Committee's professionals,

on the same terms and to the same extent as provided to Lender prior to the Full Payment of Lender.

(f)    No Waiver. This Order shall not constitute a waiver by Lender of any of its rights under the Prepetition Documents, the Code or other applicable law, including without limitation: (1) its right to later assert that, notwithstanding the terms and provisions of this Order, any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) its right to later assert a claim under Code § 507(b). Lender's failure, at any time or times hereafter, to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith. No delay on the part of Lender in the exercise of any right or remedy under this Order shall preclude any other or further exercise of any right or remedy. The Lender shall not be deemed to have suspended or waived any of its rights or remedies unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender, and directed to Debtor.

(g)    Adequate Protection of Insurance Premium Finance Company. Debtor is authorized to pay to Premium Assignment Corporation ("PAC") an amount not to exceed $6,971.00 for the period from September 19, 2006 through the October 6, 2006 ("Final Coverage Period"), as adequate protection of PAC's alleged interests in Debtor's general liability insurance policies issued by Granite State Insurance known as 02LX42588202 and 02UD465800423 (collectively, the "PAC Policies"), which interests arise in connection with a Premium Finance Agreement concerning said Policies executed by the Debtor on or about December 29, 2005, provided (1) either Debtor, Lender and the Committee subsequently agree or (2) the Court later determines that PAC holds an unpaid claim against Debtor for such $6,971 after taking into account all deposits Debtor has made with PAC and other all other amounts PAC is entitled to apply to its claims against Debtor (including, without limitation, all refunds of unearned premiums arising due to subsequent adjustments to or early cancellation of Debtor's insurance coverage financed by PAC). However, notwithstanding the foregoing, the Debtor shall not be required to maintain the PAC Policies from and after the date upon which it ceases operations and has rejected the

-17-

lease of its warehouse facility located at 4141 S. Pulaski, Chicago, Illinois. If the Debtor (or its authorized representatives) elect to cancel the PAC Policies, then upon the effective date of any cancellation of the PAC Policies by the Debtor, the automatic stay of Code § 362 shall be lifted, without further Order, to permit PAC to take all steps necessary to enable it to realize on its interests, if any, in the PAC Policies or their proceeds.

(h)    Liquidation of the Accounts Receivable.  At any time following the entry of this Order, but only upon the prior written consent of the Committee and Shapiro and, if prior to Full Payment of Lender, the prior written consent of Lender, the Debtor may sell, liquidate or otherwise dispose of any of its accounts receivable, either by outright sale, or by placing the accounts receivable with a factor or other agent with authority to liquidate such property on the Debtor's behalf on commercially reasonable terms; provided, that, prior to Full Payment of Lender, any compromise or settlement of any such accounts receivable by Debtor or its agent shall be subject to prior written consent by Lender.

(i)    Liquidation of the Life Insurance Policies.  With the prior written consent of the Committee and Lender (and after Full Payment of Lender, with the prior written consent of Shapiro), Debtor and/or Lender may sell, surrender, liquidate or otherwise dispose of any of the Life Insurance Policies, if the Committee and Lender (or Shapiro, after Full Payment of Lender) have agreed in advance, in writing, to the terms of the disposition of such proceeds; provided, however, in all events (a) Lender shall be deemed to hold a First Priority Lien in all such proceeds (and in any account(s) in which they may be deposited from time to time) to secure the Prepetition Debt and all other amounts owed to Lender by Debtor, (b) no party in interest other than Lender shall be deemed to hold a lien or security interest in any such proceeds, and (c) from and after Full Payment of Lender, Remington shall be deemed to have reserved its right to assert any claim that Remington might have to such proceeds to the extent that Cash Collateral, rather than unencumbered property of Debtor, is used to pay claims against the Debtor which arise under Code § 503, including but not limited to payment of claims by Shapiro for rent under the Lease pursuant to Paragraph 8(j) of this Order.

7.    Binding Effect.

(a)     Stipulations and Findings.   The stipulations contained in Paragraph C of this Order, and the terms of Paragraph 5(a)(i) of this Order, shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, subject only to the right of the Committee to commence an adversary proceeding challenging such stipulations and terms on or before October 31, 2006.  The stipulations contained in Paragraph D of this Order, and the terms of Paragraph 5(a)(ii) of this Order, shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, subject only to the right of the Committee to commence an adversary proceeding challenging such stipulations and terms on or before November 30, 2006.  The stipulations contained in Paragraph E of this Order, and the terms of Paragraph 5(a)(iii) of this Order, shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, subject only to the right of the Committee to commence an adversary proceeding challenging such stipulations and terms on or before November 30, 2006.  With respect to any adversary proceedings which may be initiated by the Committee against Lender, Shapiro or Remington pursuant to this Paragraph 7(a):  (i) the Committee is hereby authorized pursuant to Code § 1103(c)(5) to commence any such adversary proceeding against Lender, Shapiro and/or Remington without any requirement of a bond, or any demand and consent from the Debtor, or further authorization of the Court; (ii) the Committee may assert, in any such adversary proceeding or proceedings, any cause of action which could have been asserted by the Debtor against the defendants in such lawsuits including without limitation Avoidance Actions; and (iii) the automatic stay of Code § 362 shall be deemed lifted to the extent necessary to permit the Committee to file and prosecute any such adversary proceeding against Lender, Shapiro and/or Remington.

(b)     Order.   Except as provided in Paragraph 7(a) herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing.  If this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court without the consent of Lender, such termination or subsequent order shall not effect (a) the

-19-

stipulations and findings contained in Paragraphs C, D and E of this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interests or any other benefit or claim authorized hereby with respect to any Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Lender, Shapiro and Remington shall be entitled to all the rights, remedies, privileges and benefits, including the liens and priorities granted herein. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

(c) <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (1) confirming any chapter 11 plan; (2) converting the Case to a case under chapter 7; or (3) dismissing the Case.

8. <u>Additional Provisions Governing the Rights of Shapiro and Remington Following Full Payment of Lender</u>. Solely upon Full Payment of Lender, and subject to the terms of Paragraph 9 of this Order, the following terms shall be deemed effective with respect to Debtor's subsequent use of Cash Collateral:

(a) <u>Cash Deposit Procedures On And After Full Payment of Lender</u>. Solely with respect to use of Cash Collateral by Debtor after Full Payment of Lender: (i) Lender shall no longer have the right to declare a Termination Date under the terms of this Order on account of an Event of Default; (ii) Lender's consent to the use of Cash Collateral by the Debtor or any authorized representative of the Debtor shall no longer be required as a condition to such Cash Collateral use; and (iii) the Debtor or its authorized representatives shall deposit all of the estate's Cash Collateral into any one or more deposit accounts which the estate may be authorized to maintain pursuant to the regulations of the United States Trustee, pending the subsequent use of such cash pursuant to the terms of this or any other Order of Court; provided, however, that Lender shall not be deemed to have waived or released any of its rights, claims and interests in or against any of the Aggregate Collateral as such rights, claims or interests may exist or arise from time to time after Full Payment of Lender (including, without limitation, all of Lenders' rights under Code §§ 362(f) and 363(e),

-20-

or Lender's rights to request payment or reservation of an additional amount of Cash Collateral to secure accrued and accruing Allowable 506(b) Amounts), all of such rights, claims and interests being deemed fully and expressly reserved by this Order.

(b)    The Second Transition and the Shapiro Reserve.  The Second Transition shall occur when the Debtor or its authorized representatives have either paid the Shapiro Debt in full or have established a cash reserve in a segregated, interest-bearing account sufficient to fully pay one hundred twenty percent (120%) of the Shapiro Debt (the "Shapiro Reserve"), the sufficiency of which shall be determined either by the agreement of Shapiro, the Debtor and the Committee or, absent such agreement, by the Court after notice and a hearing.

(c)    Budgets.  Debtor shall be authorized to use Cash Collateral pursuant to the Budget which is in effect at that time under the terms of this Order, on the same terms specified in paragraph 1 of this Order.  However, in addition to the expense items noted in said Budget, the Debtor shall also be authorized and directed to use Cash Collateral to pay (i) any administrative claim for unpaid rent or additional rent which is then due to Shapiro with respect to the Debtor's lease (the "Lease") of realty located at 4141 S. Pulaski, Chicago, IL (the "Warehouse") which may have accrued from and after the Petition Date and which was omitted from earlier budgets; and (ii) any administrative claims payable under 11 U.S.C. §503(b)(1)(A), including all claims of governmental units for taxes which arose following the commencement of the Case which are known to the Debtor, which were incurred by the Debtor in the ordinary course of its business and which are not payable to any insider of the Debtor or any professional employed by the Debtor or the Committee.  The Debtor shall give the Committee's counsel at least forty-eight (48) hours advance notice prior to paying any such administrative claim which may be payable with respect to the Lease, any employee claim asserted against the Debtor or any claim asserted against the Debtor by an insider of the Debtor and, if within forty-eight (48) hours of receiving such advance notice the Committee's counsel informs Debtor's counsel of the Committee's objection to paying such claim, objects to the payment of such claim, the payment of the objectionable expense shall not be made absent notice and a hearing.

(d)    <u>Extension of Future Budgets</u>.   Until the Second Transition, the term and content of the Budget may be extended and modified from time to time, as determined either by the agreement of the Debtor, Shapiro and the Committee or, absent such agreement, by the Court after notice and a hearing, and specifically at the status hearings which will be set on the Motion from time to time after the entry of this Order.  From and after the Second Transition, the term and content of the Budget may be extended and modified from time to time, as determined either by the agreement of the Debtor, Remington and the Committee or, absent such agreement, by the Court after notice and a hearing, and specifically at the status hearings which will be set on the Motion from time to time after the entry of this Order.

(e)    <u>Replacement Liens Granted To Shapiro</u>.    As adequate protection, and pursuant to Code §361(2), Shapiro shall, without requirement of further action of the parties or the entry of an order of Court, be granted replacement liens on the Postpetition Collateral as security for payment of the Shapiro Debt.  These replacement liens: (1) are and shall be in addition to the Shapiro Liens; (2) are and shall be Second Priority Liens (and subject to the Prepetition Liens, Replacement Liens of Lender, the Permitted Liens, the Carveout and Unpaid Budgeted Expenses) that are properly perfected, valid and enforceable without any further action by Debtor, Lender or Shapiro and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.

(f)    <u>Replacement Liens Granted To Remington</u>.    As adequate protection, and pursuant to Code § 361(2), effective upon commencement of the Second Transition, Remington shall, without requirement of further action of the parties or the entry of an order of Court, be granted replacement liens on the Postpetition Collateral as security for payment of the Remington Debt.  These replacement liens:  (1) are and shall be in addition to the Remington Liens; (2) are and shall be Third Priority Liens (and subject to the Prepetition Liens, Replacement Liens of Lender, the Shapiro Liens, the Permitted Liens, the Carveout and Unpaid Budgeted Expenses) that are properly perfected, valid and enforceable without any further action by Debtor, Lender, Shapiro or Remington and without the

execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.

       (g)   <u>Section 507(b) Claims of Shapiro and Remington</u>.   The Committee, Shapiro and Remington stipulate and agree that:  (i) it is doubtful that the Debtor's efforts to liquidate the Aggregate Collateral will yield sufficient net proceeds to fully repay the Shapiro Debt and the Remington Debt; (ii) the Debtor's use of Cash Collateral prior to Full Payment of Lender to fund its efforts to liquidate the Aggregate Collateral has greatly increased the likelihood that proceeds will be available, from the liquidation of the Aggregate Collateral, to pay the Shapiro Debt and the Remington Debt, and it is in the interests of both Shapiro and Remington that the Debtor's efforts in this regard should continue; and (iii) neither Shapiro nor Remington have been damaged, to date, as a result of the use of Cash Collateral by the Debtor to liquidate the Aggregate Collateral, and neither Shapiro nor Remington shall have a claim against the Debtor which arises under Code §507(b) which results from the Debtor's post-petition use of Cash Collateral pursuant to the terms of this Order; <u>provided, however</u>, that nothing in this Order shall constitute a release or waiver of any claim by Remington relating to the unencumbered funds of the Debtor's estate to the extent that Cash Collateral, rather than the unencumbered funds, is used to pay administrative expense claims against the Debtor which arise under Code § 503 including but not limited to payment of claims by Shapiro for rent under the Lease pursuant to Paragraph 8(j) of this Order; <u>provided, further</u>, that any and all claims of Shapiro or Remington against Debtor under Code § 507(b) shall be junior in all respects to any Code § 507(b) claim of Lender against Debtor arising at any time.

       (h)   <u>Application of Cash Collateral To The Shapiro Debt After the Full Payment of Lender</u>.  Until the Second Transition, Debtor shall hold all Cash Collateral in trust for Shapiro and shall use Cash Collateral only on the terms provided for in this Order. The Debtor shall disburse Cash Collateral to pay the Shapiro Debt either upon the agreement of Shapiro, the Debtor and the Committee to such payment or, absent such agreement, by the Court after notice and a hearing.

(i)     Application of Cash Collateral To The Remington Debt After the Second Transition. Effective upon commencement of the Second Transition, the Debtor shall hold all Cash Collateral in trust for Remington and shall use Cash Collateral only on the terms provided for in this Order, and the Debtor shall disburse Cash Collateral to pay the Remington Debt either upon the agreement of Remington, the Debtor and the Committee to such payment or, absent such agreement, by the Court after notice and a hearing.

(j)     The Lease. With respect to the Lease: (i) Shapiro shall not seek payment of any post-petition claim it may have with respect to the Lease or the Debtor's use and occupancy of the Warehouse, under Code § 503 or otherwise, except from Cash Collateral paid pursuant to the terms of this Order; and (ii) the Debtor and Shapiro agree that the Lease shall be rejected under 11 U.S.C. § 365 as soon as possible following the completion of the Debtor's efforts to sell its inventory and other assets and, following such rejection, the Debtor's obligation to pay use and occupancy to Shapiro shall be limited to a fair use and occupancy for the space and facilities within the Warehouse which may be needed, for among other things, to complete the collection of the estate's accounts receivable, as set either by the agreement of Shapiro, the Debtor and the Committee or, absent such agreement, by the Court after notice and a hearing.

9.     Priority of Shapiro and Remington Liens and Claims. Notwithstanding anything to the contrary, the terms and provisions of the Shapiro Subordination Agreement and Remington Subordination Agreement shall not be deemed amended or modified by this Order in any way.

10.     Notice of Status Hearing/Entry of Order. A status hearing on this proceeding shall be held on October 10, 2006 at 11:30 A.M., and may be continued from time to time without further notice other than that given in open court. Debtor is directed to immediately serve a copy of this Order by first class mail, postage prepaid, upon all entities which have requested service of notice of proceedings in this matter (excluding the signatories to this Order and those other parties in interest which have registered to receive electronic notice of proceedings in this Case) which service shall constitute adequate and proper notice of the entry of this Order.

Dated: September 28, 2006

-24-

Honorable Jack B. Schmetterer
United States Bankruptcy Judge

**STIPULATED TO AND AGREED:**

**FABER BROTHERS, INC.**

By _____
One of Its Attorneys

**WELLS FARGO FOOTHILL, INC.**

By _____
One of Its Attorneys

**SHAPIRO FAMILY LIMITED
PARTNERSHIP**

By _____
One of Its Attorneys
For Leslie _____
permission

**REMINGTON ARMS COMPANY**

By _____
One of Its Attorneys
For W. Soll Na
by permission

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By _____
One of Its Attorneys
For Bruce Dophe
by permission

## EXHIBIT A

## DEFINED TERMS AND RULES OF CONSTRUCTION

### *Defined Terms*

1.    ***Aggregate Collateral.***  Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.    ***Aggregate Liens.***  Collectively, the Prepetition Liens and the Replacement Liens.

3.    ***Allowable 506(b) Amounts.***  All fees, costs, expenses, interest at the default rate provided by Section 2.6(c) of the Loan Agreement, and other charges due or coming due under the Prepetition Documents with respect to the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent allowable under Code § 506(b), including all reasonable out-of-pocket filing and recording fees, attorneys', consultants' and paralegals' fees and expenses, external and internal audit fees and expenses, closing fees, unused facility fees, letter of credit fees, and all other costs and expenses incurred by Lender under the Prepetition Documents with respect to the Prepetition Debt, including such fees, costs and charges incurred in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto; and (b) the representation of Lender in and in connection with the Case.

4.    ***Avoidance Actions.***  Any causes of action and any avoidance actions of Debtor's estate under Code §§ 544, 545, 547, 548, 549, 550 or 553, and proceeds thereof.

5.    ***Blocked Account.***  Account No. 4100167451 at Wells Fargo Bank, N.A., as established by and subject to the terms and provisions of that certain Four Party Wholesale Lockbox Agreement, dated May 10, 2004, by and among Debtor, Lender and Wells Fargo Bank, N.A.

6.    ***Budget.***  The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, for different amounts or different periods, all as may be agreed to by Lender from time to time.  The Budget shall be further deemed to include any expenses incurred by the Debtor pursuant to and in accordance with the Faber Brothers, Inc., Sales Commission Program dated August 10, 2006, as amended from time to time with Lender's consent (the "Commission Program").  Furthermore any such expenses incurred under the Commission Program shall constitute Unpaid Budgeted Expenses even if not payable by Debtor until after the Termination Date, provided, that, such expenses otherwise satisfy the definition of Unpaid Budgeted Expenses.

7.    ***Carveout.***  For the purposes of enabling Debtor's estate to pay allowed fees and disbursements as may be awarded from time to time pursuant to Code §§ 330 and 503(b), in the amounts and for the parties specified in Paragraph 3 of this Order; provided,

however, that the Carveout may be used only subject to the terms and provisions of Paragraph 3 of this Order. Notwithstanding anything to the contrary, for purposes of this Order, the Carveout is intended to be (and shall be conclusively deemed to be) a "real carve-out" as that term was defined by the bankruptcy court in <u>Blackwood Associates LP v. Federal Home Loan Mortgage Corporation</u>, 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995), wherein a specific amount of Cash Collateral, either in existence or to be generated, is being earmarked for the payment of certain fees and disbursements specified in Paragraph 3 of this Order, and the payment thereof is not conditioned upon a specific event or occurrence other than the accrual of such fees and disbursements during the periods set forth in Paragraph 3 of the Order and the allowance of such amounts by the Court. As such, the Carveout shall not be subject to invasion or disgorgement by or to parties other than those which are specific beneficiaries of the Carveout.

8.      *Case*. This chapter 11 case or any superseding chapter 7 case of the Debtor.

9.      *Cash Collateral*. All "cash collateral," as that term is defined in Code § 363(a), in which Lender has an interest, all deposits subject to setoff rights in favor of Lender, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable. To the extent any such cash collected or received is not clearly identifiable as attributable to Prepetition Collateral or Postpetition Collateral, such cash shall be deemed to be proceeds of Prepetition Collateral.

10.     *Code*. The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

11.     *Committee*. Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

12.     *Emergency Cash Collateral Order*. That certain Agreed Order Authorizing Debtor To: (A) Use Cash Collateral on an Emergency Basis; (B) Grant Adequate Protection and Provide Security and Other Relief to Lender entered in this Case on July 20, 2006 (as amended, modified or supplemented from time to time with Lender's consent).

13.     *Event of Default*. Any one or more of the following events, but only to the extent that such event(s) may occur prior to the Full Payment of Lender: (a) Debtor commits any Event of Default under the Loan Agreement first arising after the Filing Date (other than by reason of Section 8.6 of the Loan Agreement with respect to Debtor); (b) Debtor fails to perform any of its obligations in strict accordance with the terms of this Order; (c) Debtor fails to comply with any of the Sale Covenants; (d) Debtor, without Lender's consent, seeks the use of Cash Collateral on terms which are not permitted by this Order; (e) Debtor, without Lender's consent, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or which is given superpriority administrative

-28-

expense status under Code § 364(c); (f) Debtor files a motion to conduct a Code § 363 sale of all or part of the Aggregate Collateral on terms unacceptable to the Lender; (g) any key management of the Debtor is removed or lost; (h) a COO acceptable to Lender is not acting as Debtor's Chief Operating Officer; (i) Debtor files a chapter 11 plan that is not acceptable to Lender; (j) there is a deadlock among any board of directors of Debtor on any material issue; (k) any representation or warranty made by Debtor in any certificate, report or financial statement delivered to Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (l) the Case is converted to a case under chapter 7 of the Code; or (m) a Trustee is appointed or elected in the Case, or an examiner with the power to operate Debtor's business is appointed in the case.

14.   *Filing Date*.  July 5, 2006.

15.   *First Priority Liens*.  Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to avoidance or subordination pursuant to any provisions of the Code, applicable nonbankruptcy law, or any agreement.

16.   *Full Payment of Lender*.  Receipt by Lender of an amount of Cash Collateral equal to (1) all accrued and accruing claims known to and asserted by Lender against Debtor (including, without limitation, all Allowable 506(b) Amounts, all other Prepetition Debt and all fees and expenses of Hostmann incurred by Lender), with no further obligation of Lender to remit Cash Collateral or make loans or any other financial accommodations to Debtor pursuant to this Order, the Loan Agreement or otherwise (including, without limitation, any obligation to remit Cash Collateral to Debtor to pay the Carveout or Unpaid Budgeted Expenses), plus (2) a reasonable reserve as determined by Lender (or pursuant to further order of Court if the Committee does not agree to the amount determined by Lender) for accrued and accruing costs and expenses of Lender (including, without limitation, legal costs and expenses) to be incurred in its defense of any objections that may be asserted under Paragraph 6(a) of this Order, plus (3) if the Committee timely commences an adversary proceeding against Lender in accordance with Paragraph 7(a) of this Order, a reasonable reserve as determined by Lender (or pursuant to further order of Court if the Committee does not agree to the amount determined by Lender) for accrued and accruing costs and expenses of Lender (including, without limitation, legal costs and expenses) to be incurred in connection with Lender's defense of such adversary proceeding commenced by the Committee; provided, that, Lender shall deliver notice to counsel for Debtor and counsel for the Committee of the occurrence of Full Payment of Lender, and the Debtor and the Committee shall be deemed to have reserved the right to seek, on not less than three (3) business days' notice to Lender, an order of this Court determining that Full Payment of Lender has occurred in accordance with the foregoing.

17.   *Lender*.  Wells Fargo Foothill, Inc.

18.  **_Life Insurance Policies_**.  The three life insurance policies which the Debtor identified in response to question 9 to Schedule B of its schedules of assets and liabilities which it has filed in the Case, and all property rights, including without limitation the right to insurance benefits, proceeds and cash surrender value which is associated with the ownership of such life insurance policies.

19.  **_Loan Agreement_**.  That certain Loan and Security Agreement between Debtor and Lender, dated as of June 15, 2000, as amended, modified and supplemented from time to time.

20.  **_Obligations._**  The obligations, as that term is defined in the Loan Agreement.

21.  **_Permitted Liens_**.  (a) Liens in favor of third parties upon the Prepetition Collateral with priority over Lender's security interests in the Prepetition Collateral, which third-party liens are: (i) not subordinated by agreement with Lender prior to the Filing Date or otherwise subordinated under Code § 510 and (ii) non-avoidable, valid, properly perfected and enforceable as of the Filing Date; (b) the Carveout; and (c) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

22.  **_Postpetition Collateral_**.  All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles, claims, causes of action, all leaseholds, and all other Collateral (as that term is defined in the Loan Agreement) and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing; provided, however, that Postpetition Collateral shall exclude any and all Avoidance Actions, and, in the case of a grant of liens to either Shapiro or Remington, the Postpetition Collateral shall not include the Life Insurance Policies.

23.  **_Prepetition Collateral_**.  All of the Collateral (as that term is defined in the Loan Agreement) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof, or, in the case of either Shapiro or Remington (as applicable), the collateral specified in the Shapiro Documents or the Remington Documents (as applicable), and all proceeds, rents, issues, profits and products thereof provided, however, that Prepetition Collateral shall exclude any and all Avoidance Actions, and, in the case of Shapiro or Remington, the Prepetition Collateral shall also exclude the Life Insurance Policies.

24.  **_Prepetition Debt_**.  (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all fees, costs, interest, and expenses, plus (b) all Allowable 506(b) Amounts.

25.  **_Prepetition Documents_**.  The Loan Agreement and the "Loan Documents" (as that term is defined in the Loan Agreement).

26.    ***Prepetition Liens.***  Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Liens.

27.    ***Remington.***  The Remington Arms Company.

28.    ***Remington Debt.***  (a) All indebtedness or obligations under the Remington Documents as of the Filing Date, including all fees, costs, interest, and expenses, plus (b) all fees, costs, expenses, interest, and other charges due or coming due under the Remington Documents with respect to the Remington Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent allowable under Code § 506(b).

29.    ***Remington Documents.***  The note, security agreements and other documentation executed by the Debtor which evidences the Remington Debt and the grant to Remington of the Remington Liens.

30.    ***Remington Liens.***  Remington's asserted security interests in the Prepetition Collateral under the Remington Documents, subject only to Prepetition Liens, the Shapiro Liens and Permitted Liens.

31.    ***Remington Subordination Agreement.***  That certain Intercreditor Agreement, dated as of August 6, 2001, by and between Lender and Remington Arms Company, as amended, modified or supplemented from time to time.

32.    ***Replacement Liens.***  First Priority Liens in the Postpetition Collateral granted to Lender pursuant to this Order, subject only to the Permitted Liens.

33.    ***Shapiro.***  The Shapiro Family Limited Partnership.

34.    ***Shapiro Debt.***  (a) All indebtedness or obligations under the Shapiro Documents as of the Filing Date, including all fees, costs, interest, and expenses, plus (b) all fees, costs, expenses, interest, and other charges due or coming due under the Shapiro Documents with respect to the Shapiro Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent allowable under Code § 506(b).

35.    ***Shapiro Documents.***  The note, security agreements and other documentation executed by the Debtor which evidences the Shapiro Debt and the grant to Shapiro of the Shapiro Liens.

36.    ***Shapiro Liens.***  Shapiro's asserted security interests in the Prepetition Collateral under the Shapiro Documents, subject only to the Prepetition Liens and Permitted Liens.

37.    ***Shapiro Subordination Agreement.***  That certain Subordination Agreement, dated as of June 15, 2000, by and between Lender and the Shapiro Family Limited Partnership, as amended, modified or supplemented from time to time.

38.     ***Termination Date***.   The earlier to occur of:  (a) at Lender's election prior to Full Payment of Lender, the second day following the date on which Lender provides, via facsimile or overnight mail, written notice to Debtor, Debtor's counsel, any Committee's counsel and the United States Trustee of the occurrence of an Event of Default; and (b) October 10, 2006.

39.     ***Trustee***.  Any trustee appointed or elected in the Case.

40.     ***Unpaid Budgeted Expenses***.   Administrative expenses allowable under Code §§ 503(b) and 507(b) that are expressly set forth in the Budget (i.e., without taking into account any variance otherwise permitted in this Order) and accrued prior to the Termination Date, and on account of which Lender has not previously remitted Cash Collateral to Debtor.

## **EXHIBIT B**

**[****See Attached***]**

Faber Brothers, Inc.
Cash Forecast

Faber budget for we 10-6-06 revised (3).Oper exp budget we 10-6
9/28/2006 1:16 PM

# WEEKLY CASH FLOW FORECAST

| line # | | Remaining Budget | 10/6/2006 | Total |
|---|---|---|---|---|
| 1 | Opening cash balance on 9-27-06 | 4,153,332 | 4,131,287 | 4,153,332 |
| | **Sources** | | | |
| 2 | Collection on accounts receivable | | 25,000 | 25,000 |
| 3 | Collection on cash sales | | 10,000 | 10,000 |
| | **Uses** | | | |
| 4 | **Payroll expense:** | | | |
| 5 | Weekly payroll expense-Salary | 3,045 | 5,790 | 8,835 |
| 6 | Weekly payroll expense-Hourly | | 4,675 | 4,675 |
| 7 | Commissions | | 20,000 | 20,000 |
| 8 | Weekly payroll expense | 3,045 | 30,465 | 33,510 |
| 9 | **Administrative and General** | | | |
| 10 | Rent | | | 0 |
| 11 | Real estate taxes | | | 0 |
| 12 | Receipts from Subtenant | | | 0 |
| 13 | Chief Liquidating Officer | 15,000 | 9,000 | 24,000 |
| 14 | Professional fees-Debtor | | | 0 |
| 15 | Debtor Legal | | | 0 |
| 16 | CCC | | | 0 |
| 17 | Equipment Rental | | | 0 |
| 18 | Comp & Office Supplies | | | 0 |
| 19 | Utilities | 2,000 | | 2,000 |
| 20 | Insurance-genl | | | 0 |
| 21 | Communications | | 6,971 | 6,971 |
| 22 | Insurance group | 1,500 | | 1,500 |
| 23 | Equipment repair & maintenance | | | 0 |
| 24 | Computer programming | | | 0 |
| 25 | Postage, FedEx, & EDI | | | 0 |
| 26 | Burglar alarm | | 250 | 250 |
| 27 | Taxes & licenses | | | 0 |
| 28 | Travel | | | 0 |
| 29 | Health & sanitation | 500 | 500 | 500 |
| 30 | Other | | 1,500 | 1,500 |
| 31 | Payroll on-costs | | | 0 |
| 32 | Payroll taxes | | | 0 |
| 33 | Document storage | | | 0 |
| 34 | Advertising | | | 0 |
| 35 | US Trustee fees | | | 0 |
| 36 | **Selling** | | | |
| 37 | Salesperson travel | | | 0 |
| 38 | **Total Operating Expenses** | 22,045 | 48,186 | 70,231 |
| | Estimated Surplus/(Deficit) | 4,131,287 | 4,118,101 | 4,118,101 |

**EXHIBIT B**